**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **In re:** | ) | |
| **Wesley John Bickel and Rebecca Danielle Bickel,** | ) | **Case No. 26-50113** |
| **Debtors.** | ) | **Chapter 12** |
| **Agriland FS, Inc.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Adv. No. 26-5007** |
| **Wesley John Bickel and Rebecca Danielle Bickel,** | ) | |
| **Defendants.** | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Agriland FS, Inc. filed an adversary complaint against debtor-defendants Wesley and Rebecca Bickel, asserting two nondischargeability counts under 11 U.S.C. §§ 523(a)(2) and (a)(6). The Bickels move to dismiss the adversary complaint, arguing it fails to state a claim under both counts. Specifically, they argue that Agriland's complaint does not allege any debt or extension of credit obtained by "false pretenses, a false representation, or actual fraud," which § 523(a)(2) requires. And the complaint does not satisfy § 523(a)(6)'s "malicious injury" requirement. Agriland resists and states it has adequately pled claims upon which relief can be granted. Alternatively, Agriland requests leave to amend its complaint.

For the reasons set forth below, the court DENIES the Bickels' motion to dismiss.

## BURDEN OF PROOF

The Bickels bear the burden to establish that Agriland's adversary complaint is insufficient. *See Gill Constr., Inc. v. 18th & Vine Auth.*, No. 05-0608-CV-W-SOW, 2006 WL 8438149, at *1 (W.D. Mo. July 11, 2006) (assigning burden of proof to party requesting dismissal under Rule 12(b)(6)).

## BACKGROUND

The court derives the following background information from the complaint and attached exhibits, statements counsel for the parties made at oral argument, and the record in this adversary proceeding and the Bickels' chapter 12 bankruptcy case.[1]

Many of the alleged facts are not in dispute. In 2016, Wesley Bickel began farming row crops in northern Missouri.[2] After a poor crop year in 2024, Wesley scaled back his farming operation.[3] "In late 2024 and through 2025[,] he liquidated all his [oversecured] equipment . . . and his final full-sized crop, retaining only overencumbered equipment and a small amount of leased land he has custom-farmed.

---

[1] The court derives facts from public records relating to the Bickels' bankruptcy and this adversary proceeding only to the extent those facts do not conflict with the complaint and only to provide relevant background information. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("In addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record." (internal quotation marks omitted)); *Z.J. v. Kansas City*, No. 4:15-cv-00621-FJG, 2016 WL 4126569, at *3 (W.D. Mo. Aug. 2, 2016) ("[S]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss." (citation omitted)).

[2] Chapter 12 Plan at 1, *In re Bickel*, No. 26-50113 (Bankr. W.D. Mo. July 1, 2026), Dkt. No. 52.

[3] Chapter 12 Plan at 1.

He now works for a large farmer."[4] In April 2026, the Bickels filed for chapter 12 bankruptcy relief.[5]

In Spring 2024, the Bickels and Agriland, an agricultural service company, executed a note and security agreement "establishing a lending relationship for loans up to $1,000,000.00 for use solely in the Bickels' farming operations."[6] In April 2024, Agriland issued a $600,000 loan.[7] The loan's original maturity date was December 15, 2024.[8] On December 10, 2024, Agriland extended the maturity date to February 15, 2025.[9] The next day, Agriland extended the maturity date again to March 15, 2025.[10] Despite the extended maturity date, the Bickels did not repay the loan.[11] Instead, according to Agriland, Wesley surreptitiously absconded with $200,000 to $300,000 of Agriland's collateral.[12]

From September 2024 to December 2024, the Bickels sold over 50,000 bushels of corn and around 15,000 bushels of soybeans under the names of Wesley's father and his father's company.[13] Although Agriland had a valid and perfected security

---

[4] Chapter 12 Plan at 1.
[5] Chapter 12 Voluntary Pet., *In re Bickel*, No. 26-50113 (Bankr. W.D. Mo. Apr. 2, 2026), Dkt. No. 1.
[6] Compl. 3, Dkt. No. 1, June 30, 2026. The cited pleading was filed in this adversary proceeding. All subsequent citations to the record in this order refer to pleadings filed in this adversary proceeding unless otherwise noted.
[7] Compl. 3.
[8] Compl. 3; Ex. 2 to Compl. 1.
[9] Compl. 3; Ex. 3 to Compl. 1.
[10] Compl. 3; Ex. 4 to Compl. 1.
[11] Compl. 3.
[12] Compl. 4–6.
[13] Compl. 5.

interest in the crops, the Bickels did not turn over the sale proceeds.[14] Instead, they allegedly used the proceeds to pay other expenses and unsecured creditors.[15] The Bickels admit they "went around the lien."[16] Their defense is that they ran out of credit, and that their nonpayment did not harm Agriland.[17] Wesley allegedly stated that it "cost approximately $200,000 to $300,000 to take the crop out,"[18] the same amount as the crops' estimated value.[19] So, no harm, no foul.

Before the Bickels filed for bankruptcy, Agriland filed state-court lawsuits against Wesley and his father for breach of contract, conversion, and fraud.[20] Now in the Bickels' bankruptcy case, Agriland has filed an adversary complaint, seeking to except the Bickels' obligations to Agriland from discharge.[21] Specifically, Agriland asserts that the obligations are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) because the alleged crop scheme constituted false representations and fraud, and caused willful and malicious injury.[22]

The Bickels ask the court to dismiss both counts of Agriland's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[23] For the first count (§ 523(a)(2)(A)), the Bickels argue that they did not obtain or

---

[14] Compl. 4, 6.
[15] Compl. 6.
[16] Compl. 6.
[17] Compl. 6; *see also* Defs.' Mot. Dismiss 4–6, Dkt. No. 9, July 30, 2026 (arguing Agriland would have borne the 2024 harvest costs but for the Bickels' actions).
[18] Compl. 6.
[19] Compl. 6.
[20] Compl. 7.
[21] *See* Compl., Dkt. No. 1, June 30, 2026.
[22] Compl. 8–10.
[23] *See* Defs.' Mot. Dismiss, Dkt. No. 9, July 30, 2026.

receive an extension of credit through the crop scheme, because the April 2024 loan preceded the alleged misconduct.[24] Moreover, they argue they did not obtain the maturity date extensions through false pretenses, false representations, or fraud.[25] Thus, the complaint fails to state a claim under § 523(a)(2)(A). For the second count (§ 523(a)(6)), the Bickels admit that the complaint alleges a willful injury.[26] But they say they did not intend to harm Agriland.[27] Rather, their conduct "benefited" Agriland, given the harvest costs.[28] The Bickels argue that because they did not intend to injure Agriland, there was no malicious injury, and thus no claim under § 523(a)(6).

Having summarized the relevant background information, the court turns to the merits of the Bickels' motion to dismiss.

## ANALYSIS

Rules 8(a)(2), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, which apply to this adversary proceeding under Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, govern the present motion to dismiss. Rule 8(a)(2) requires a plaintiff to include in its complaint "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, when a plaintiff asserts a fraud claim, Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud," except that

[24] Defs.' Mot. Dismiss 2; Compl. 3–4.
[25] Defs.' Mot. Dismiss 2–3.
[26] Defs.' Mot. Dismiss 3.
[27] Defs.' Mot. Dismiss 5–6.
[28] Defs.' Mot. Dismiss 5.

"[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Lastly, Rule 12(b)(6) empowers parties to file motions to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To avoid dismissal under Rule 12(b)(6), a complaint must include sufficient factual content to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a facially plausible claim if the alleged facts provide the defendant with "'fair notice' of the nature of the claim, [and the] 'grounds' on which the claim rests." *See id.* at 555 n.3 (construing Fed. R. Civ. P. 8(a)(2)). Under this standard, the court should not dismiss a complaint under Rule 12(b)(6) if the facts pled enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint lends itself to "at least one plausible reading [that] 'allows the court to draw the reasonable inference that the defendant is liable,'" the court should not dismiss the complaint. *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 316 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). This is the case "even if the complaint strikes a savvy judge that actual proof of the facts alleged is improbable and recovery very remote and unlikely." *Id.* (quoting *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010)) (quotation marks omitted).

The court takes a multistep approach to determining whether the complaint states a facially plausible claim. *See, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (setting forth the three-step test). First, the court must

determine the elements of each cause of action in the complaint. *Id.* Second, the court must consider all allegations together, accept them as true, and construe them in favor of the plaintiff. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (construing *Iqbal*, 556 U.S. at 678–79); *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) (requiring court to construe allegations in favor of plaintiff). And third, the court must analyze the counts individually to determine whether the complaint states a viable claim for each element of each cause of action. *See, e.g.*, *Santiago*, 629 F.3d at 130 (analyzing each count individually to "determine whether they plausibly give rise to an entitlement for relief" (citation omitted)).

Applying this test, the court will analyze the counts in Agriland's adversary complaint below.

## I. Count I: False Pretenses, False Representation, or Actual Fraud

Section 523(a)(2) prohibits debtors from discharging debts "for money, property, services, or an extension, renewal, or refinancing of credit . . . obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

### A. False Representation

To except from discharge a debt obtained by a false representation, the creditor must prove "that a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage." *Lariat Cos. v. Wigley (In re Wigley),* 620 B.R. 87, 91 (B.A.P. 8th Cir. 2020) (quoting *Hernandez v. Gen. Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th

Cir. 2017)), *aff'd*, 15 F.4th 1208 (8th Cir. 2021). The Bickels argue that the complaint fails the second, fourth, and fifth elements.[29] They do not dispute that the adversary complaint satisfies the first and third elements. Thus, the court will focus its analysis on the three disputed elements: knowledge of falsity, justifiable reliance, and proximate causation.

**1. Knowledge of Falsity**

To satisfy the knowledge requirement, the creditor must show that the debtor knew its representation was false when the debtor made it. *Eccles v. Fee (In re Eccles)*, 393 B.R. 845, 852 (Bankr. W.D. Mo. 2008). The court must consider the debtor's "knowledge and experience" when determining whether the debtor knew the representation was false. *Walton v. Pavel (In re Pavel)*, 663 B.R. 750, 763 (Bankr. W.D. Mo. 2024) (citing *Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)). Even if the debtor did not know his statements were false, the creditor can satisfy the knowledge element by showing the debtor made representations with "reckless disregard for the truth." *Id.*

Here, the complaint does sufficiently allege knowledge of falsity. Under the note and security agreement dated April 5, 2024, the Bickels represented that they "*will* not sell, offer to sell, or otherwise dispose of the Collateral" without authorization, and that they "*shall* provide [Agriland] with a full and complete list of the only persons or businesses to whom [they] intend[] to sell, transfer or otherwise

[29] Defs.' Mot. Dismiss 2.

dispose of Collateral."[30] The complaint alleges that the Bickels knew the April 2024 representations were false because they concealed the alleged crop scheme. But the complaint also alleges the crop scheme did not begin until September 2024. Moreover, Agriland does not allege that the Bickels contemplated the scheme when they entered into the note and security agreement in April 2024.[31] In other words, the complaint does not state that in April 2024, the Bickels knew they would secretly sell the collateral or provide an incomplete list of buyers. Thus, Agriland fails to allege that the Bickels knew the April 2024 representations were false when they made them.

Agriland's allegations concerning the maturity date extensions, however, do sufficiently address the knowledge requirement. Agriland extended the loan's maturity date on December 10 and 11, 2024. Although the complaint does not explicitly state that the Bickels requested the maturity date extensions, the loan documents Agriland attaches to its complaint suggest that the Bickels did request

[30] Ex. 1 to Compl. 3 (emphasis added).
[31] In its response to the Bickels' motion to dismiss, Agriland states that "to the extent the evidence ultimately demonstrates the fraudulent scheme was contemplated from inception or formed before the Additional Loan Commitment December extensions, the Complaint also necessarily alleges that Defendants falsely represented at the time of the original loan (April 2024) that they would comply with the collateral restrictions." Pl. Agriland FS, Inc.'s Resp. Opp'n Defs.' Mot. Dismiss 10, Dkt. No. 16, Aug. 14, 2026. Specifically, Wesley's admission that he went around Agriland's lien and the alleged scheme of using Wesley's father's name and his father's business to sell the crops "supports a reasonable inference that [the Bickels] never intended to honor the collateral covenants." Pl. Agriland FS, Inc.'s Resp. Opp'n Defs.' Mot. Dismiss 10. But Agriland does not raise this argument in its complaint. Based on the facts Agriland alleges in its complaint, nothing facially connects Wesley's admission and the alleged crop scheme to the April 2024 representations.

the extensions. *See* Exs. 2–3 to Compl. ("On behalf of **AGRILAND FS, Inc.**, we are pleased to advise you of the approval of *your* loan request in accordance with the terms of this Loan Commitment." (second emphasis added)). As part of the extensions, the Bickels agreed to be bound "by the terms and conditions of the Master Note and Security Agreement between [themselves] and **AGRILAND FS, Inc.** dated as of **04/05/2024**." *See* Exs. 2–3 to Compl. Thus, the Bickels appear to have made the same representations about selling collateral and providing a full list of buyers on or around December 10 and 11, 2024. These alleged representations support the reasonable inference that the Bickels implicitly represented they still possessed the collateral. But the complaint alleges that starting in September 2024, and continuing through on or about December 2, 2024, the Bickels secretly sold Agriland's collateral and used the proceeds to pay other expenses and creditors.[32] These allegations lead to the further reasonable inference that when the Bickels represented on December 10 and 11, 2024, that they would not sell the collateral without Agriland's authorization, they knew their implied representation was false. Because the complaint alleges the Bickels made the December 2024 representations after selling the collateral, Agriland sufficiently pleads that the Bickels knew the representations were false when they made them.

**2. Justifiable Reliance**

Next, the creditor must allege justifiable reliance, which is a "less demanding" standard than reasonable reliance. *Field v. Mans*, 516 U.S. 59, 61 (1995). Justifiable

[32] Compl. 4–6.

reliance permits a creditor to rely on a representation even when the falsity of the representation could have been uncovered through investigation. *Id.* at 70. A creditor, however, cannot ignore obvious red flags or unquestioningly accept a debtor's representation when its falsity would have been apparent through a cursory investigation. *Id.* at 71. Thus, justifiable reliance "does not require a creditor to independently investigate a representation unless the circumstances would be apparent to one of his knowledge and experience or a warning signal exists that the debtor is deceiving the creditor." *Burmeister v. Wilcox (In re Wilcox)*, 194 B.R. 631, 634 (Bankr. W.D. Mo. 1996) (citing *Field*, 516 U.S. at 71). Accordingly, "justification is a matter of the qualities and characteristics of the particular [creditor]." *Field*, 516 U.S. at 71.

Here, the complaint alleges justifiable reliance. Because "Agriland had no knowledge of and no reason to monitor transactions conducted by"[33] Wesley's father or his father's business, Agriland was justified in relying on the Bickels' representations that they would not sell Agriland's collateral without authorization and that they would provide a complete list of buyers. Agriland could not have discovered that these representations were false through a cursory investigation given the Bickels' concealment of the third-party sales. Because the crop scheme did not raise any obvious red flags or warning signals, Agriland was justified in relying on the Bickels' representations.

---

[33] Compl. 6.

### 3. Proximate Causation

Proximate causation "is an issue of foreseeability. The court must determine whether the debtor's false representation led to the [creditor's] foreseeable injury." *Walton v. Pavel (In re Pavel)*, 663 B.R. 750, 765 (Bankr. W.D. Mo. 2024) (citing *Wieberg v. Thompson (In re Thompson)*, 316 B.R. 326, 328 (Bankr. W.D. Mo. 2004)).

The Bickels argue that the complaint fails to establish proximate cause because Agriland suffered no loss. They point to ¶ 36 of the adversary complaint, which states that "Wesley Bickel testified that it cost approximately $200,000 to $300,000 to take the crop out."[34] Because the complaint references harvest costs, the Bickels argue that the complaint "pleads itself out of court"[35]; the complaint cannot assert damages for the conversion of $200,000 to $300,000 of collateral if Agriland would have spent that much or more to harvest the crops.

Though the complaint references Wesley's testimony about the harvest costs, whether Agriland suffered a financial loss is ultimately a factual issue the court must determine at trial. At this stage, the complaint must merely allege that the Bickels' misrepresentations proximately caused Agriland damage or harm. And here, the complaint sufficiently alleges that the Bickels' misrepresentations led to Agriland's foreseeable injury. The crop scheme allegedly resulted in Agriland's loss of collateral and proceeds. Moreover, the Bickels concede that Agriland, as a secured creditor,

[34] Compl. 6.
[35] Reply Pl.'s Resistance Mot. Dismiss 2, Dkt. No. 21, Aug. 24, 2026.

had a right to the crops.[36] By secretly selling the crops to third parties, the Bickels violated that right. Agriland's alleged loss of control over its collateral is an injury in and of itself. Thus, Agriland sufficiently pleads proximate causation.

Because Agriland sufficiently pleads knowledge of falsity, justifiable reliance, and proximate causation, it asserts a substantive claim for relief against the Bickels under a false-representation theory. The court will next analyze whether Agriland asserts a substantive claim under an actual-fraud theory.

**B. Actual Fraud**

As the Supreme Court noted in *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016), "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud . . . that can be effected without a false representation." *Id.* at 359. "Because the five standard elements [for § 523(a)(2)(A)] include a representation by the debtor and reliance by the creditor, [and] *Husky* says that neither is required for a claim of actual fraud, a modification [to the § 523(a)(2)(A) analysis] is necessary." *All Star Collision, LLC v. Scott (In re Scott)*, 674 B.R. 664, 669 (Bankr. E.D. Mo. 2025) (citing 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed. 2025)). "[A] creditor may prevail on an actual-fraud theory under [§] 523(a)(2)(A) by establishing (1) an act or omission that counts as 'fraud,' (2) that involves moral turpitude or intentional wrong, (3) for which the debtor is legally responsible, and (4) that proximately causes harm to the creditor." *Id.* The first two elements merit additional elucidation.

[36] *See* Defs.' Mot. Dismiss 3 (conceding that the Bickels "technically injured [Agriland] by converting its collateral").

As to the alleged act or omission that counts as "fraud," fraud "connotes deception or trickery generally." *Husky Int'l Elecs., Inc.*, 578 U.S. at 360. It includes "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 Collier on Bankruptcy ¶ 523.08[1][e] (16th ed. 2025); *see also Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (adopting this definition). Though fraud is "difficult to define," a "transfer of assets that . . . impairs a creditor's ability to collect the debt" constitutes fraud. *Husky Int'l Elecs., Inc.*, 578 U.S. at 360.

Under the second element, an act is committed with mortal turpitude if it "is contrary to justice, honesty, or morality." *Mortal Turpitude*, *Black's Law Dictionary* (12th ed. 2024). An intentional wrong is a "[b]reach of one's legal duty[] [or a] violation of another's legal right . . . [done with] intention, purpose, or design." *Wrong*, *Black's Law Dictionary* (12th ed. 2024).

Here, the complaint sufficiently alleges actual fraud. First, Agriland alleges that the Bickels transferred assets in a manner that "impair[ed] [Agriland's] ability to collect the debt," which constitutes "fraud." *Husky Int'l Elecs., Inc.*, 578 U.S. at 360. Second, Agriland sufficiently alleges that the Bickels executed the crop scheme to intentionally violate Agriland's legal right to the crops and sale proceeds. Moreover, the scheme involved alleged dishonesty. Thus, Agriland pleads that the Bickels' scheme involved moral turpitude and intentional wrongdoing. Third, the Bickels do not deny they diverted proceeds from the sale of Agriland's collateral.

Therefore, they are legally responsible. And fourth, as previously discussed,[37] the complaint sufficiently alleges the crop scheme proximately caused harm to Agriland. Thus, Agriland has sufficiently pled a claim for relief under § 523(a)(2).

The complaint also satisfies Rule 9(b)'s particularity requirement. Agriland alleges that the Bickels (who) secretly sold their crops to third parties (what), from September to December 2024 (when), using Wesley's father's name and his business (how), to "go around [Agriland's] lien"[38] (why). Thus, Agriland has sufficiently pled "the details of the [Bickels'] fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result," to survive dismissal under Rule 12(b)(6). *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

Because Agriland also asserts a substantive claim for relief against the Bickels under an actual-fraud theory, the court DENIES the Bickels' motion to dismiss the first count against them.

## II. Count II: Willful and Malicious Injury

Section 523(a)(6) prohibits debtors from discharging debts "for willful and malicious injury." 11 U.S.C. § 523(a)(6). The Bickels concede that the complaint alleges a willful injury. But they argue that the complaint fails to plead malice.

An injury is "malicious" if the debtor intended to cause harm to the creditor. *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996). Specifically,

---

[37] *See supra* Section I.A.3.
[38] Compl. 6.

malice requires "conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause harm." *Luebbert v. Global Control Sys., Inc. (In re Luebbert),* 987 F.3d 771, 780 (8th Cir. 2021); *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999) (stating that the creditor must prove the debtor targeted their conduct at the creditor). To plead malice, the creditor must allege that the debtor's conduct went beyond reckless disregard for the creditor's interest or beyond the debtor's knowledge that the debtor violated the creditor's legal rights. *In re Long*, 774 F.2d 875, 880 (8th Cir. 1985). There must be "aggravated circumstances." *Id.* at 881.

The complaint sufficiently pleads malice. The complaint's allegations support the inference that the Bickels knew Agriland had a perfected security interest in the crops and disregarded it. Over four months, the Bickels allegedly sold approximately 50,000 bushels of corn and 15,000 bushels of soybeans under Wesley's father's name and his father's business to avoid detection by Agriland. In total, there were sixty-seven sales transactions.[39] Agriland alleges that "[t]he overwhelming volume of crop sold . . . demonstrate[d] a coordinated scheme to divert the crop proceeds away from Agriland" and " circumvent Agriland's perfected agricultural liens."[40] Wesley Bickel allegedly admits that he sold the crops under his father's name "to go around [Agriland's] lien."[41] This admission satisfies Agriland's burden to plead that the

---

[39] *See* Compl. 5; Exs. 7–8 to Compl. (noting that sixty-three of sixty-seven MFA Incorporated sales tickets and all four Coffey Feed Mill sales tickets involved Agriland's collateral).
[40] Compl. 5–6.
[41] Compl. 6.

Bickels intended to cause harm to Agriland by intentionally violating Agriland's rights, as a secured creditor, to the collateral and its proceeds. Moreover, the alleged scale and duration of the scheme reasonably permit the court to infer aggravated circumstances. Thus, Agriland has sufficiently pled a willful and malicious injury.

The Bickels argue that the scheme did not cause Agriland financial harm, and thus, there is no malicious injury. But this argument fails for the same reason the Bickels' proximate causation argument fails.[42] Whether Agriland suffered a financial harm is ultimately a factual issue that cannot be resolved on a motion to dismiss. At this stage, the court is limited to the facts alleged in the complaint. *Hartman v. Bowles*, 39 F.4th 544, 545 (8th Cir. 2022). It cannot consider the Bickels' "counterfactual"[43] argument that Agriland's hypothetical harvest costs would have exceeded the crops' value or the Bickels' "benevolent motive"[44] in secretly selling Agriland's collateral and using the proceeds to pay other creditors in violation of their agreements with Agriland. Accepting the facts alleged in the complaint as true and viewing them in the light most favorable to Agriland, Agriland pleads a malicious injury. Therefore, Agriland states a facially plausible claim for relief under § 523(a)(6).

Because Agriland asserts a substantive claim for relief against the Bickels under § 523(a)(6), the court DENIES the Bickels' motion to dismiss this count.

---

[42] *See supra* Section I.A.3.
[43] *See* Defs.' Mot. Dismiss 5.
[44] Defs.' Mot. Dismiss 5 ("The [Bickels'] actions, far from being certain to harm [Agriland], benefited [Agriland].").

## CONCLUSION

For the reasons explained above, the court DENIES the Bickels' motion to dismiss.

IT IS SO ORDERED.

Dated: 10/19/2026

/s/ Brian T. Fenimore
United States Bankruptcy Judge